IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| CECIL FELDER, | ) |   |
|---|---|---|
|   | ) |   |
| Plaintiff, | ) |   |
|   | ) |   |
| v. | ) | CIVIL ACTION NO. 3:14-CV-911-MHT |
|   | ) | [WO] |
| SGT. CARTER, *et al.*, | ) |   |
|   | ) |   |
| Defendants. | ) |   |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Cecil Felder brings this 42 U.S.C. § 1983 damages action challenging a denial and delay in the provision of medical treatment after he was injured in a motor vehicle accident while on prison work detail. Felder was a state inmate incarcerated at the Bullock Correctional Facility in Union Springs, Alabama, when he filed suit.[1] Named as defendants are Sergeant Ruby Carter and Clayts Jenkins.[2]

Defendants filed an answer, special report, and supporting evidentiary materials addressing Felder's claims for relief. Doc. 29. In these documents, Defendants deny that they acted in violation of Felder's constitutional rights. Upon receipt of Defendants' special report, the court issued an order directing Felder to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioned Felder that "the court may at any time thereafter and without notice to the parties (1) treat the special report and any supporting evidentiary

---

[1] To the extent that Felder's complaint asserts a request for injunctive relief in the form of an institutional transfer for fear of retaliation by prison officials for filing suit, his request for equitable relief has been rendered moot by his release from custody. Doc. 37. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979).

[2] The complaint also named Commissioner Thomas, Warden Kenneth Jones, Warden Sandra Giles, and Warden Rene Mason as defendants. Felder's complaint against these defendants was dismissed by order entered November 6, 2014. *See* Docs. 8, 15.

materials as a motion for summary judgment." Doc. 30 at 2. Felder responded to Defendants' report, *see* Doc. 34, but his response does not demonstrate that there is any genuine issue of material fact. *See* Doc. 30 at 2. The court will treat Defendants' report as a motion for summary judgment, and it recommends resolution of this motion in favor of Defendants.

## I. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322–324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Felder to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex,* 477 U.S. at

324; Fed. R. Civ. P. 56(e)(3); *Jeffery*, 64 F.3d at 593–594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Felder's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

## II. DISCUSSION[3]

On May 15, 2014, Felder, a passenger in a Department of Transportation (DOT) van transporting several inmates during a trash detail, was injured when the trailer pulled by the van

---

[3] Felder's opposition seeks to raise a new theory of liability concerning Defendant Jenkins. Doc. 34 at 5. He asserts that it is not clear what Defendant Jenkins did at the scene of the accident, but nevertheless seeks to impose liability on this defendant under a theory of respondeat superior. *Id.* at 5–6. In accordance with well-settled law, however, the court limits its review to the allegations set forth in the complaint. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x. 905, 909-910 (11th Cir. 2012) (plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (court refused to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint).

was hit from behind by a car. According to the complaint, the other inmates in the van were also injured. Although paramedics were called to the scene, Felder states that they could not transport the inmates to the hospital without approval from a correctional official. Felder alleges that he could not walk after the incident and sat in pain for an hour waiting for prison staff to arrive. When Jenkins and Carter arrived at the scene, they spoke with the paramedics. Carter, after signing a "refusal" form provided by a paramedic, informed the inmates they were being returned to Bullock. Carter and Jenkins told the van driver to take the back roads back to Bullock. Felder maintains that the back roads were "damaged and torn," and that the long drive back to the prison caused him back and neck pain due to a lack of support, "meaning—[no] back brace and neck brace." Felder maintains that a paramedic indicated that "if someone move us they could damage something—or—hurt us more." Felder alleges that after arriving at Bullock, Carter threatened the inmates with disciplinary action or a change in custody status if they did not exit the van. Felder states that despite his informing Carter that he could not walk, the guard continued to threaten him. After observing medical staff "snatch" other inmates out of the van, Felder decided to "crawl[] out safely," hoping he would not break or damage anything. Doc. 2 at 4, Doc. 6 at 1–3.

Felder maintains that Carter and Jenkins knew he was injured but refused to provide him with proper medical care and caused him and the other inmates additional suffering by requiring that they be transported back to the prison in the DOT van. Felder claims that the paramedics would have stabilized parts of his body that were injured or broken, which neither Carter nor Jenkins did. Felder alleges that, because of injuries sustained in the accident, he remained in a wheelchair for three months and took pain pills three times a day. Felder asserts that had Carter and Jenkins not denied him prompt medical treatment via transport to a hospital or emergency room by paramedics, "things could've been and would've been better." Doc. 2 at 4, Doc. 6 at 3.

4

### A. Official Capacity

To the extent that Felder sues Defendants in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name, … treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997). In light of the foregoing, Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### B. Negligence

To the extent that Felder alleges a claim of negligence against Carter and Jenkins for their conduct as described in the complaint and amendment, he is entitled to no relief. Mere negligence by prison officials resulting in injury to an inmate under their care does not amount to a constitutional violation. The Constitution simply is not implicated by negligent acts of officials. *Daniels v. Williams*, 474 U.S. 327 (1986); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (mere negligence does not violate the Eighth Amendment); *Kelley*, 400 F.3d at 1285 (negligence insufficient to establish a constitutional violation); *Popham v. City of Talladega*, 908 F.2d 1561,

1563 (11th Cir. 1990), citing *Molton v. City of Cleveland,* 839 F.2d 240, 243 (6th Cir. 1988) (plaintiff showed mere negligence which does not establish a §1983 claim).

**C.     Deliberate Indifference**

Felder alleges that Defendants' conduct in transporting him back to Bullock rather than allowing him to be taken to the emergency room or hospital by paramedics for treatment of his injuries amounted to deliberate indifference in violation of the Eighth Amendment. "The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (*citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To demonstrate a denial of medical care in violation of the Eighth Amendment, Felder must prove both an objective and subjective component. The objective element requires Felder to demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id*. (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id*. (internal quotation marks and citation omitted).

The subjective component of Felder's medical claim requires that he demonstrate "deliberate indifference" to a serious medical need. *Farrow*, 320 F.3d at 1243. Deliberate indifference is shown by establishing that a defendant had actual knowledge or awareness of an obvious risk to a plaintiff's serious medical need and failed to take steps to abate that risk. It may be demonstrated by either actual intent or reckless disregard. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Reckless disregard occurs when a defendant "knows of and disregards an

6

excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference." *Id*. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference); *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (finding, as directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Additionally, where a plaintiff complains of delay in medical treatment, he has the burden of establishing that he suffered a significant effect from the delay. *See Hill*, 40 F.3d at 1188.

Defendants' evidence reflects that on May 15, 2014, Carter was the supervisor of inmates on the work squad to which Felder was assigned. At approximately 1:50 p.m., she received a call that Felder and three other inmates had been in a minor accident during their work detail. A Honda Accord had hit a trailer being pulled behind the van in which the inmates were riding. The impact caused a small dent to the trailer. Carter reported the incident to Jenkins. The guards departed Bullock at 2:00 p.m. and arrived at the scene of the incident within thirty to forty minutes. A state trooper, two DOT officials, and the paramedics were also at the scene. Carter and Jenkins spoke with everyone involved in the accident. Except for the inmates, who complained about back and neck pain, the other parties involved—the driver of the DOT van and the driver of the Accord— voiced no problems or injuries. Carter and Jenkins also spoke with the paramedics, who had

already assessed the inmates' vital signs by the time the officers arrived and were preparing to depart.

In light of the inmates' complaints of injury to their necks and backs, Carter and Jenkins advised the paramedics that Dr. Siddiq would conduct another examination of the inmates upon their return to Bullock. At approximately 3:40 p.m. the state trooper completed his accident report. At 3: 45 p.m. the van carrying Felder and the other inmates departed for Bullock. Two of the inmates exited the van after arriving at the facility. Felder and the other inmate—Tristan Trim — remained on the van, claiming that they could not get out of the van and needed to be taken to the hospital.Dr. Siddiq directed prison officials to transport the inmates to the Bullock County Hospital. The van carrying Felder and Trim arrived at the Bullock County Hospital at 4:49 p.m. Felder was assisted into a wheelchair and taken into the hospital for examination. The inmates returned to Bullock at 8:15 p.m. and were written a profile for bottom bunk assignments. Doc. 29-2 at 1–5; Doc. 29-3 at 1–2; Doc. 29-4 at 1–2; Doc. 29-5 at 1–2; Doc. 29-6 at 44–47.

Defendants' evidence includes an affidavit from Dr. Tahir Siddiq, the site Medical Director at Bullock. Dr. Siddiq also has admitting privileges at the Bullock County Hospital. He examined Felder at the Bullock County Hospital on May 15, 2014, where Felder underwent a full body scan. According to Dr. Siddiq:

> … The scan showed no objective evidence of injury. Actually, I never saw any evidence of injury.
>
> When we got back to the prison Felder said he could not walk. So, to get him to move I allowed him (through my doctor's orders) to use a cane or a wheelchair for several weeks. We also prescribed him some pain relievers for a while. Again, these decisions were based only upon his subjective complaints and not on any objective evidence of an actual injury. After a few weeks, Felder said that he didn't need the wheelchair anymore and he ran along. I have not seen him for anything related to this accident since then (to the best of my memory).

> I can say, to a reasonable degree of medical certainly, that, based on my education, knowledge, training, and examination and treatment of Felder, that the decision to have Felder ride to the prison (and then the hospital) in the DOT van, as opposed to riding in the ambulance, had NO EFFECT WHATSO[E]VER on Felder's injury (if any) or his physical condition.

Doc. 29-5 at 2 (emphasis in original).

Felder maintains that Defendants knew he and his fellow inmates were injured but "refused us." Doc. 18 at 3. He claims the paramedics would have transported him to a hospital for his injuries had Defendants allowed it. Doc. 34 at 3. Felder's basis for Defendants' liability relies on the theory that his injuries from the May 15, 2014, incident worsened due to Defendants' failure to allow him to be transported to a hospital by the paramedics. He generally alleges that the failure to permit him to be transported to a hospital by paramedics, whom he maintains would have stabilized his neck and back, exacerbated his injuries and amounted to a delay and denial of adequate medical care. Docs. 2, 18.

Carter and Jenkins, Felder claims, had no authority or right to determine whether he was hurt in response to his self-report of injury. Doc. 34 at 5. In her affidavit, Carter acknowledges that Felder and the other inmates complained of back and neck injuries and states they were told they would receive another medical examination when they returned to Bullock. The evidence also shows that Defendants spoke with everyone involved in the incident as well as the paramedics who had evaluated Felder's condition. Based on the information communicated to them at the scene along with their own observations, which failed to detect any sign of injury to Felder, Carter and Jenkins maintain that they had no information or reason to believe he could not return to Bullock in the DOT van. Assuming, *arguendo,* that Felder's injuries were serious, he presents no evidence that Carter and Jenkins had subjective knowledge of them. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (holding that to establish a defendant's deliberate indifference to a serious medical

need, a plaintiff must demonstrate "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts.").

While a delay in access to medical care that is "tantamount to 'unnecessary and wanton infliction of pain'" may constitute deliberate indifference to a prisoner's serious medical needs, *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam) (quoting *Estelle*, 429 U.S. at 104), some delay in rendering medical care may be tolerable, depending upon the nature of the medical need and the reason for the delay. *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir. 1994). Here, the undisputed evidence falls far short of demonstrating the degree of "deliberate indifference" to Felder's medical needs required to demonstrate Defendants knew that he faced a substantial risk of serious harm and disregarded that risk by intentionally or deliberately delaying his ability to receive necessary medical treatment or by interfering with his ability to access such treatment. *Farmer*, 511 U.S. at 837; *Lancaster v. Monroe Cty.*, 116 F.3d 1419, 1425 (11th Cir. 1997) ("[A]n official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate."). Felder asserts that "[he is] not the same [because of Defendants' actions] and [] discovered [he] ha[s] a disk[] in [his] back that's bulging out," he remained in a wheelchair for three months, and he took pain medication three times a day. Doc. 2 at 4; Doc. 34 at 2. The court notes, however, that the CT of Felder's spine taken at the hospital on May 15, 2014, shows he had normal alignment, no evidence of prevertebral soft tissue swelling, no significant central stenosis or foraminal stenosis throughout the cervical spine, no evidence of fracture, minimal central disc protrusion at C2-3, and minimal disc bulge at C3-4. Doc. 29-6 at 44. Moreover, Felder's assertions do not establish that Carter and Jenkins were aware of facts establishing a serious medical need or that they disregarded

any known risk to him. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (for liability to attach, the official must know of and then disregard an excessive risk of harm to the inmate); *Quinones*, 145 F.3d at 168. Defendants' affidavits regarding the incident are also corroborated by the contemporaneously compiled objective medical records. *See* Doc. # 29-6 at 1–55; *see also* Doc. 29-5 at 1–2. The law is well settled that "[s]elf serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records," and they do not do so here. *Whitehead v. Burnside*, 403 Fed. App'x 401, 403 (11th Cir. 2010) (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990)). Defendants' motion for summary judgment on Plaintiff's Eight Amendment claim is due to be granted.

**D.     Threats**

Felder alleges that Carter threatened him with disciplinary action or a change in custody status for his refusal to exit the DOT van after it returned to Bullock from the accident scene and continued to threaten him after he informed her he was unable to walk. Doc. 18 at 2. To state a viable claim for relief in a 42 U.S.C. § 1983 action, the conduct complained of must have deprived Plaintiff of rights, privileges or immunities secured by the Constitution. *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 119 S.Ct. 977, 985 (1999); P*arratt v. Taylor*, 451 U.S. 527 (1981); *Willis v. University Health Services, Inc.*, 993 F.2d 837, 840 (11th Cir. 1993). Derogatory, demeaning, profane, threatening or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation. *See Hernandez v. Fla. Dep't of Corr.*, 281 Fed. Appx. 862, 866 (11th Cir. 2008) (holding that inmate's claim of "verbal abuse alone is insufficient to state a constitutional claim"); *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (mere verbal taunts, despite their distressing nature, directed at inmate by jailers do not violate inmate's constitutional rights); *Ayala v. Terhune*,

195 F. App'x. 87, 92 (3d Cir. 2006) ("[A]llegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983."); *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts ... resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment."); *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992) (mere threats, even to inmate's life, made by guard do not satisfy the objective component of the Eighth Amendment as verbal threats and harassment are "necessarily excluded from the cruel and unusual punishment inquiry...."); *Ivey v. Wilson*, 832 F.2d 950, 954-955 (6th Cir. 1987) (verbal abuse alone is not violative of the Eighth Amendment); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) ("alleged verbal threats by jail officials ... did not rise to the level of a constitutional violation."); *Gaul v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (Eighth Amendment trivialized by assertion that mere threat constitutes a constitutional wrong).

Plaintiff fails to state a cognizable claim regarding Carter's use of threatening language. Accordingly, Defendants are entitled to summary judgment on this claim

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (Doc. 29) be GRANTED;

2. Judgment be GRANTED in favor of Defendants;

3. This case be DISMISSED with prejudice.

It is further

ORDERED that **on or before August 24, 2017**, the parties may file an objection to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc*., 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, on this the 9th day of August, 2017.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge